## UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

FILED

KENDRA ROSE LEVO DION,

Plaintiff,

v. Civil Action No. 1:26-cv-00010-MSM-AEM

OFFICER ASHLEIGH FLESER, in her individual capacity,
Defendant.

JUN 30 2026

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

## SECOND AMENDED COMPLAINT

Plaintiff Kendra Rose Levo Dion ("Plaintiff"), proceeding pro se, alleges as
follows:

## I. JURISDICTION

1. This action arises under the Constitution and laws of the United
   States, including 42 U.S.C. § 1983.

2. Plaintiff alleges that Defendant, while acting under color of state law
   as a police officer employed by the Bristol Police Department,
   deprived Plaintiff of rights secured by the Fourteenth Amendment to
   the United States Constitution.

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in the District of Rhode Island pursuant to 28 U.S.C.
   § 1391 because all events giving rise to this action occurred in
   Bristol, Rhode Island.

## II. PARTIES

5. Plaintiff Kendra Rose Levo Dion is an adult resident of Rhode Island.

6. Defendant Officer Ashleigh Fleser was, at all times relevant to this Complaint, a police officer employed by the Bristol Police Department and was acting under color of state law.

## III. FACTUAL ALLEGATIONS

**Background**

7. During the events giving rise to this action, Plaintiff resided at 37 Thayer Street in Bristol, Rhode Island, with her then-fiancé, Felix Bousquet.

8. By late 2024, Plaintiff had decided to end the relationship because she believed it had become emotionally and psychologically abusive.

9. Plaintiff had begun preparing to leave the residence by organizing and packing her belongings while simultaneously searching for alternative housing. Plaintiff had not yet secured another residence and was attempting to safely prepare for her departure.

10. Plaintiff feared that Felix would retaliate if he learned she intended to permanently leave the relationship or seek judicial protection.

11. Prior to January 2025, Plaintiff had prior contact with the Bristol Police Department regarding incidents involving Felix.

**January 18, 2025**

12. On January 18, 2025, Plaintiff submitted a detailed online report through the Bristol Police Department's online reporting system.

13. In that report, Plaintiff described the history of the relationship, Felix's escalating behavior, her fear for her safety, and her desire to safely leave the residence.

14. Plaintiff also informed the Bristol Police Department that firearms were present inside the residence.

15. After reviewing Plaintiff's report, Defendant Officer Ashleigh Fleser telephoned Plaintiff.

16. During that conversation, Defendant advised Plaintiff that because firearms had been mentioned in the report, officers would be required to respond to the residence to conduct a welfare check.

17. Plaintiff expressly advised Defendant that she was concerned a police response would escalate Felix's behavior.

18. Defendant also advised Plaintiff that if Plaintiff felt unsafe, she should leave the residence.

19. Later that evening, Defendant Officer Ashleigh Fleser and two additional Bristol police officers responded to the residence.

20. During that response, Defendant discussed Plaintiff's report with Felix.

21. Plaintiff alleges that Defendant disclosed information Plaintiff had provided to law enforcement concerning Plaintiff's plans to leave the residence and the concerns Plaintiff had expressed regarding Felix.

22. Plaintiff alleges that Felix assured the officers he would keep the peace.

23. Plaintiff, however, alleges that Felix's behavior continued to escalate following the officers' response.

24. By the conclusion of the January 18 response, Defendant knew Plaintiff feared retaliation from Felix, knew Plaintiff was attempting to safely leave the residence, and knew Plaintiff believed disclosure of sensitive information could increase the danger she faced.

25. Despite Plaintiff's request for assistance, Plaintiff remained in the residence because she had not yet secured alternative housing and was attempting to safely prepare to leave while continuing to work and care for her minor son.

**January 20, 2025**

26. On January 20, 2025, Plaintiff remained at the residence because she was attempting to organize and pack her belongings while continuing to search for alternative housing.

27. Throughout that day, Plaintiff documented the events occurring inside the residence because she believed Felix's behavior had become increasingly unpredictable and she feared the situation was escalating.

28. Plaintiff used her Apple Watch and other means to contemporaneously record interactions throughout the day because she was concerned that future events might require documentation.

29. Throughout the day, Felix repeatedly approached Plaintiff while she packed her belongings, questioned what she was taking, watched Plaintiff's activities, and made comments that Plaintiff perceived as attempts to provoke and intimidate her.

30. Plaintiff attempted to remain calm, avoided confrontation, and continued preparing to leave the residence peacefully.

31. By the evening of January 20, Plaintiff believed she could no longer safely remain in the residence without obtaining judicial protection.

32. At approximately 5:45 p.m., Plaintiff submitted a second online report through the Bristol Police Department's reporting system requesting immediate guidance and assistance.

33. In that report, Plaintiff explained that Felix had spent the day harassing, antagonizing, and manipulating her while she attempted to prepare to leave the residence.

34. Plaintiff further advised that she had documented the day's events because she feared the situation was escalating.

35. Plaintiff specifically requested guidance concerning an emergency protective order and asked whether there was a way to safely remain in the residence long enough to complete preparations for her departure without further interference or escalation.

36. After Plaintiff submitted the report, she left the residence to bring her minor son to his father's home.

37. While Plaintiff was driving, Defendant Officer Ashleigh Fleser telephoned Plaintiff regarding the report.

38. During that conversation, Plaintiff explained the events that had occurred throughout the day and advised Defendant that she believed Felix's behavior had escalated significantly.

39. Plaintiff informed Defendant that she intended to go to court immediately the following morning to obtain a domestic violence protective order.

40. Plaintiff expressly warned Defendant that she feared Felix's reaction if he learned she intended to seek a protective order before she could obtain one.

41. Plaintiff communicated that concern because she believed disclosure of her intentions would increase the danger to her before she could obtain judicial protection.

42. Plaintiff ended the conversation believing that she would seek protection through the court the following morning.

43. Approximately twenty minutes after Plaintiff's conversation with Defendant ended, Plaintiff received a telephone call from Felix.

44. During that call, Felix angrily confronted Plaintiff and stated, "You want to get a protective order on me?"

45. Plaintiff had not informed Felix that she intended to seek a protective order.

46. Plaintiff alleges, upon information and belief, that Defendant affirmatively disclosed, or otherwise communicated, Plaintiff's intention to seek a protective order to Felix before Plaintiff was able to obtain judicial protection.

47. After receiving Felix's call, Plaintiff became afraid to return directly to the residence because she believed Felix now knew she intended to seek court protection.

48. Plaintiff nevertheless returned to the residence later that evening because she believed she only needed to remain there one final night before seeking judicial protection the following morning.

**January 21, 2025**

49. On the morning of January 21, 2025, Plaintiff awoke and discovered that Felix had already left the residence.

50. Plaintiff intended to go to court that morning to seek a domestic violence protective order, consistent with what she had discussed with Officer Fleser the previous evening.

51. Before going to the courthouse, Plaintiff drove to a Staples store to print documents she intended to use in support of her application for a protective order.

52. While in the Staples parking lot, Plaintiff was served with a restraining order that Felix had obtained earlier that morning.

53. Plaintiff had not yet been afforded the opportunity to present her own application for a domestic violence protective order before Felix obtained and served the restraining order against her.

54. As a result of being served with the restraining order, Plaintiff was unable to return to the residence and was immediately displaced from her home.

55. Plaintiff remained without permanent housing until approximately March 15, 2025. During that period, Plaintiff stayed in hotels and, at times, slept in her vehicle while continuing to search for housing.

56. Plaintiff continued working during this period in an effort to pay for temporary lodging and support herself and her minor son despite the financial hardship caused by her displacement.

57. Following her displacement, Plaintiff sought to challenge the allegations made in the restraining order proceedings and attempted to provide law enforcement with information and evidence that she believed supported her own reports regarding Felix's conduct.

58. Following Plaintiff's displacement, Plaintiff experienced significant emotional distress and sought medical evaluation for episodes of chest pain, rapid heart rate, palpitations, and other stress-related physical symptoms.

59. Plaintiff also experienced episodes of swelling involving her lips and tongue, hives, and other physical symptoms, for which she sought additional medical evaluation.

60. As a result of the events described above, Plaintiff suffered substantial economic loss, emotional distress, physical symptoms requiring medical evaluation, and the loss of the safety and stability of her home. The nature and extent of those damages are described more fully below.

**IV. DAMAGES**

61. As a direct and foreseeable result of Defendant's conduct, Plaintiff suffered substantial economic losses, emotional distress, and physical injuries.

62. Plaintiff was immediately displaced from her residence after being served with the restraining order on January 21, 2025, and remained without permanent housing until approximately March 15, 2025.

63. During that period, Plaintiff incurred significant expenses for temporary lodging, including hotel accommodations, and at times was forced to sleep in her vehicle while continuing to search for permanent housing.

64. Plaintiff continued working throughout this period despite her displacement and financial hardship in order to pay for temporary housing, maintain her employment, and continue supporting herself and her minor son.

65. Plaintiff suffered substantial emotional distress, including fear, anxiety, humiliation, emotional anguish, and ongoing psychological trauma resulting from the events alleged herein.

66. Plaintiff experienced significant physical symptoms during and following these events, including episodes of chest pain, rapid heart rate, palpitations, panic symptoms, hives, swelling of her lips and tongue, and other stress-related physical manifestations.

67. Plaintiff sought emergency medical treatment and evaluation by multiple healthcare providers, including emergency medical personnel, hospital providers, cardiology specialists, and other physicians, and underwent diagnostic testing in connection with

these symptoms.

68. Plaintiff alleges that the severe emotional distress caused by the events alleged herein substantially contributed to the physical symptoms she experienced and for which she sought medical care.

69. Plaintiff also suffered the loss of the safety, security, and stability of her home, disruption of her daily life, interference with her ability to care for herself and her minor son, and significant emotional suffering associated with her displacement.

70. Plaintiff has incurred financial losses, including housing expenses, transportation costs, medical expenses, and other out-of-pocket costs associated with the events alleged herein, and continues to experience damages.

71. Plaintiff has further suffered damages including pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, and other compensatory damages to be proven at trial.

## COUNT I

### 42 U.S.C. § 1983 – Fourteenth Amendment
### State-Created Danger
### (Against Defendant Officer Ashleigh Fleser)

72. Plaintiff incorporates by reference Paragraphs 1 through 71 as though fully set forth herein.

73. At all relevant times, Defendant Officer Ashleigh Fleser acted under color of state law as a police officer employed by the Bristol Police

Department.

74. Plaintiff informed Defendant that she intended to seek a domestic violence protective order on January 21, 2025.

75. Plaintiff specifically warned Defendant that if Felix learned of her intention before she could obtain judicial protection, Plaintiff feared he would retaliate and her safety would be jeopardized.

76. Plaintiff alleges that Defendant affirmatively disclosed, or otherwise communicated, Plaintiff's intention to seek a protective order to Felix before Plaintiff was able to obtain judicial protection.

77. Defendant knew or reasonably should have known that disclosing Plaintiff's confidential plan under the circumstances alleged would substantially increase the risk of retaliation against Plaintiff.

78. Defendant's alleged disclosure of Plaintiff's confidential plan to seek judicial protection constituted an affirmative act that increased Plaintiff's vulnerability to retaliation and placed Plaintiff in a significantly more dangerous position than she otherwise would have occupied.

79. Shortly after Plaintiff's conversation with Defendant, Felix contacted Plaintiff and confronted her about seeking a protective order, despite Plaintiff never informing him herself.

80. The following morning, before Plaintiff had an opportunity to seek judicial protection, Felix obtained and served Plaintiff with a restraining order.

81. As a direct and foreseeable result of Defendant's alleged conduct, Plaintiff was displaced from her residence, lost the opportunity to seek judicial protection before Felix obtained and served a restraining order against her.

82. As a direct and proximate result of Defendant's actions, Plaintiff suffered the damages described above.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award:

A. Compensatory damages in an amount to be determined by the jury;

B. Damages for emotional distress, pain and suffering, and physical injuries;

C. Compensatory damages including, but not limited to, medical expenses, housing expenses, transportation costs, and other economic losses proven at trial.

D. Pre-judgment and post-judgment interest as permitted by law;

E. Costs of this action pursuant to applicable law; and

F. Such other and further relief as the Court deems just and proper.

Plaintiff demands all relief available under 42 U.S.C. § 1983 and any other applicable provision of federal law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Kendra Rose Levo Dion

Plaintiff, Pro Se

24A Lawrence Street

Cumberland, RI 02864

401-603-8532

June 30, 2026